## SCHOLLE *v.* SCHOLLE *et al.*

(*Superior Court of New York City, General Term.* January 14, 1889.)

1. VENDOR AND VENDEE—RIGHTS OF VENDEE—DEFECTIVE TITLE.

Land was bought under an agreement between the purchasers by which one of them, W., was to make the purchase, and convey seven-tenths of the land to R., who should convey two-tenths to S. and P., respectively. After R. had conveyed the two-tenths to S., he executed a deed to P. purporting to convey the seven-tenths that had originally been conveyed to him. *Held*, that such deed was subject to reformation at the suit of R.'s heirs, and the purchaser from one claiming under a mortgage given by P. would not be compelled to complete his purchase.

2. SAME.

A testator devised land to his executors and the survivor of them, in trust, to receive the rents and profits, and to sell, convey, and dispose of, as to them should seem best for the interests of the estate. The executors named were testator's wife and three others, and the appointing clause stated that it was testator's wish that his wife should qualify, and that at least one of the other three should act with her. The wife alone qualified. *Held*, that the title derived from a deed executed by the wife alone, in which the other trustees did not join, and a mortgage thereon foreclosed without making such trustees parties, was sufficiently doubtful to excuse a purchaser from completing his purchase.

Appeal from special term.

Action of partition by William Scholle against Jacob Scholle and others. Plaintiff appeals from an order denying his application to compel one of the purchasers to take title, and from an order relieving another purchaser from his bids. The following is the opinion of FREEDMAN, J., at special term, handed down May 8, 1888:

"This is an action of partition. An interlocutory judgment of partition and sale was entered in this action in May, 1885. As to the premises now in question the sale took place in December, 1886, under a supplemental decree of this court. At said sale Mr. Thomas Lyons purchased two lots on the East side of Sixth avenue, 49 feet, 11 inches, north of One Hundred and Thirty-Ninth street, being 50 feet upon the avenue, and about 75 feet in depth. At the same sale Mr. Benjamin Fairchild became the bidder for six lots, and paid ten per cent. of the purchase money, and then assigned his bids to J. Romaine Brown, whereupon it was stipulated that Brown should be bound by the printed terms of sale. Subsequently, Mr. Lyons, through his attorney, served upon the referee a notice declining to accept the title, and stating several objections to the validity of the title, which may be summarized as follows: (1) That the deed from William H. Raynor and wife to Lewis J. Phillips, dated November 30, 1872, and recorded January 13, 1875, in liber 1317 of Conveyances, p. 102, is void for uncertainty, by reason of its omission to specify the amount of interest conveyed. (2) That the descendants of William H. Raynor—that is to say, his grandchildren—were not made parties to the foreclosure suit brought by Abraham Scholle, as plaintiff, against Benjamin A. Willis and others, as defendants. (3) That the executors of William H. Raynor's will, viz.: William R. Stewart, John H. Morris, and Jonathan Edgar, were not made parties to such foreclosure suit. (4) That the deed executed by Sarah E. Cornish, formerly Sarah E. Raynor, individually, and as sole acting executrix of and trustee under the will of William H. Raynor, deceased, as party of the first part, to Abraham Scholle, William Scholle, and Jacob Scholle, parties of the second part, dated November 21, 1878, and recorded in liber 1477 of Conveyances, p. 171, was void or voidable for want of a consideration, and the further reason that there were creditors of William H. Raynor who might show themselves entitled to have it set aside. (5) That no record title appears to have existed in Garrett Myer, the predecessor in title of Charles

Henry Hall.   (6) That the premises in question; or a portion of them, were
originally below the high-water line of the Harlem river.   Mr. Brown, through
his attorney, also served a notice, declining to accept title, and having objec-
tions to the validity of the title, which were substantially the same as those
urged by Mr. Lyons, except that he made no claim that the title to the lots
purchased by him was affected by the original line of high water.   Mr. Lyons
now moves to be relieved from his bids, which motion is opposed by the plain-
tiff, and at the same time the plaintiff moves that Mr. Brown be compelled to
take title.

"These motions present questions of the highest importance, because they
affect the title of a large number of lots in addition to the titles of the lots di-
rectly involved.   In view of such importance, I have given to the questions
presented the most careful consideration.   The lots in question are claimed by
the plaintiff to have been part of a large tract of land north of One Hundred
and Twenty-Fifth street, in the city of New York, owned and possessed by
Charles Henry Hall from about the year 1825 to the time of his death, in the
year 1852.   From the year last mentioned until the year 1872 nothing seems
to have been done with the property.   In 1872 Benjamin A. Willis formed a
syndicate to buy it, and did acquire title to it from the parties having an in-
terest in it.   In substance, the arrangement was that Abraham Scholle should
advance $58,500; that Willis should purchase the property, and thereupon
should transfer to William H. Raynor an equal undivided seven-tenths of the
property, and that out of these William H. Raynor should convey to Abraham
Scholle two-tenths, and to Lewis J. Phillips two-tenths.   To secure the amount
to be advanced by Abraham Scholle it was further agreed that Willis should
execute and deliver to Phillips and Raynor a bond and mortgage securing the
payment of $58,500, and that said bond and mortgage should be assigned by
Phillips and Raynor to Scholle.   The arrangement was carried out, and in
pursuance of it, the conveyances and the mortgage and the assignment thereof
were made, except that William H. Raynor, instead of conveying to Lewis J.
Phillips two-tenths in terms, executed and delivered to the latter the deed to
which the first objection above specified is made.   The deed purported to con-
vey all the undivided tenth parts which had been conveyed to Raynor by Willis,
and described them as seven undivided tenth parts.   In point of fact Raynor,
after having conveyed two-tenths to Abraham Scholle, had only five-tenths
left which he could convey.   In 1873, Lewis J. Phillips mortgaged his interest
in two-tenths to John D. Phillips.   That mortgage was foreclosed, and the
title for the interest covered by it transferred to Benjamin A. Willis by ref-
eree's deed, dated November 28, 1876, and recorded in liber 1400, p. 122.   Thus,
if the deed by Raynor to Phillips was sufficient to convey at least two-tenths,
Willis became seized of an equal undivided one-half of the property.   Abraham
Scholle foreclosed the mortgage transferred to him by Phillips and Raynor,
and the title to the property bound by that action became vested in Jacob
Scholle by referee's deed, dated April 1, 1880, and recorded in liber 1542, p.
256.   The objection to the deed by William H. Raynor to Lewis J. Phillips
cannot, in this case, be overcome by a mere reference to the statute, which
provides that a conveyance of real estate shall pass all the estate or interest to
the grantor, unless it shall appear otherwise by express terms, or by necessary
implication, from the terms of the grant, because the agreement called for a
conveyance of two-tenths only, and because Phillips has made affidavit that
the deed was not intended to convey to him the entire or five-tenths of the
interest of Raynor.   It is therefore clear that the deed is at least liable to be
reformed in equity at the suit of Raynor's representatives or heirs at law.
This being so, it remains to be seen whether all the interest in Raynor's rep-
resentatives or heirs at law has been cut off by the judgment of foreclosure
obtained by Abraham Scholle.   If it was not cut off by that judgment, some
substantial interest remains outstanding which affects the title under consid-

eration. This at once requires an examination of the merits of the second objection above specified.

"William H. Raynor died in 1874, leaving a will by which he appointed Sarah E., his wife, as executrix, and three other persons as executors. Of these Sarah E. alone qualified as executrix. Under this will the grandchildren of William H. Raynor had an interest in the remainder after the happening of certain events. The plaintiff, on the final hearing of the present motion, conceded, so far as the hearing at special term was concerned, that under the decision of *Argall* v. *Raynor*, 20 Hun, 267, the proceedings in the foreclosure action instituted by Abraham Scholle were defective for the reason that the grandchildren of Raynor, who then were infants, had not been made parties, but he insisted that the defect is immaterial by reason of the execution and delivery by Sarah E. Cornish, formerly Sarah E. Raynor, of the deed specified in the fourth objection, which is claimed to be a good and sufficient deed, and by reason of the legal effect of certain proceedings before the surrogate.

"Upon this branch of the case the following facts appear, among others, viz.: On or about October 9, 1876, Sarah E. Raynor, executrix of and trustee under the will of William H. Raynor, deceased, presented to the surrogate's court a petition for an accounting, and from the schedules filed by her in connection therewith it appeared that Abraham Scholle had presented a claim on his part against Raynor's estate for $28,948.18, with interest from November 1, 1875. This claim was classified by the executrix among the uncertain and disputed claims. In point of fact, it was based, although the schedule did not show it, upon the written guaranty of Raynor that 50 per cent. of the principal and interest of the bond and mortgage for $58,500 should be paid, and that he would also pay one-half of the taxes and assessments. On or about February 8, 1877, Abraham Scholle commenced his action to foreclose the $58,500 mortgage. In the mean time Sarah E. Raynor had married again, and her name then was Sarah E. Cornish. As such she interposed an answer to the complaint. Thereupon an agreement was made between Scholle and Mrs. Cornish that the former should withdraw his claim against the estate of Raynor, and allow the estate to be settled up, and that in consideration therefor Mrs. Cornish should withdraw her answer, and relinquish all interest she had in the mortgaged premises individually and as executrix of and trustee under the will of Raynor. The agreement was carried out, and, in pursuance thereof, Mrs. Cornish executed and delivered to Abraham Scholle, William Scholle, and Jacob Scholle the deed dated November 21, 1878. By that deed she conveyed the mortgaged premises, and all the estate, right, title, interest, claim, and demand whatsoever, both in law and equity, which William H. Raynor had in them in his life-time, and at the time of his decease, and which she had in them by virtue of his will and testament or otherwise. Thereafter, on or about December 28, 1881, Mrs. Cornish presented to the surrogate a petition for a final accounting, and the accounts and schedules filed in connection therewith showed that the claim of Scholle had been settled. The precise nature of the settlement was not fully disclosed, and no copy of the deed was submitted. The schedules simply showed that the settlement had been made by a conveyance of Raynor's interest of three-tenths in the mortgaged premises. Under these circumstances, and inasmuch as no previous order had been granted by the surrogate authorizing a sale of Raynor's real estate on the ground of the insufficiency of the personal estate to pay the debts of the testator, it is quite a serious question whether the infant grandchildren of Raynor, though represented by special guardian, were absolutely concluded as to the settlement by means of the decree of the surrogate entered upon the accounting, and directing the distribution of the surplus. In *Russell* v. *Russell*, 36 N. Y. 581, the decision was to the effect that a power to an executor to sell real estate as he shall deem expedient, and for the best interests of certain legatees named, is not well executed by the con-

veyance to one of the legatees of a portion of the real estate of the testator
in payment of a debt due from the testator to the legatee; that the debt is to
be discharged by means of the personal estate, and that the real estate can be
applied only for that purpose upon an order of the surrogate, after the per-
sonal estate is exhausted; that a sale authorized by the will, as stated, must
be one in which judgment and discretion are exercised, and which the execu-
tor, as trustee, believes to be for the interest of the legatees; and that a con-
veyance in discharge of a debt does not comply with these requisites.  It may
be argued that the decision does not strictly apply to the case at bar, because
in the latter the executrix held not only the power of sale, but also the legal
title in trust for the purposes of the will.  This at once raises the whole ques-
tion of title under Raynor's will.

"The fifth clause of the will which affects the lots in question is as follows,
viz.: *Fifthly.* I give, devise, and bequeath all the rest, residue, and re-
mainder of my estate, real and personal, unto my executrix and executors
hereinafter named, and the survivors and survivor of them, in trust, with
power to receive the rents and profits of the same, and to sell, dispose of, and
convey the same at such time or times, and in such manner, as to them shall
seem proper and best for the interest of my estate, and to invest and keep in-
vested such rents and profits, and the proceeds of such sale or sales, in bonds
of the United States of America, or of the city or state of New York, or in
first bonds and mortgages upon good and sufficient real estate, and to divide
and apply the same, and the income thereof, as hereinafter directed.'  And
the last clause of the will is as follows, viz.: *Lastly.* I hereby nominate,
constitute, and appoint my said wife, Sarah E., executrix, and my friends
William R. Stewart, John H. Morris, and Jonathan Edgar, executors, of this
my last will and testament, guardians of the property of my children who
may be under the age of twenty-one years.  And I hereby nominate, consti-
tute, and appoint my said wife, Sarah E., the guardian of the persons of my
said children who may be under the age of twenty-one years.  It is my re-
quest and wish that my wife shall qualify as executrix, and that at least one
of my said friends shall qualify and act with her as executor, and in case of
her decease that at least two of my said friends shall qualify and act as ex-
ecutors.'  It is claimed by the purchasers now before the court that by these
provisions of the will the title to Raynor's real estate became vested in the
persons named as executrix and executors as trustees, and that such result
was accomplished irrespective of the question whether or not they qualified
as executrix and executors, and notwithstanding the statute contained in 2
Rev. St. p. 109, § 55, to the effect that in case any executor shall neglect or
refuse to take upon him the execution of the will, all sales made by the ex-
ecutor or executors, who shall take upon them the execution of the will, shall
be equally valid, as if the other executor had joined therein.  And it is further
claimed that, inasmuch as at the time of the execution of the deed by Mrs.
Cornish to Scholle Bros., Jonathan Edgar and John H. Morris were living,
and had not renounced their executorship and trusteeship, the deed bound
neither them nor Raynor's grandchildren.  A similar claim arising upon the
above two clauses of the identical will, and raised by other purchasers, was
considered by the general term of the supreme court in *Argall* v. *Raynor*, 20
Hun, 267, and disposed of as follows, viz.: *Second.* A serious question arises
under the devises of the will as to the persons in whom the legal title to the
land is vested.  The fifth clause of the will devises all the real estate of the
testator "unto my executrix and executors hereinafter named, and the sur-
vivors and survivor of them, in trust with power," etc.  The testator named
his wife, Sarah E. Raynor, executrix, and his friends, William R. Stewart,
John H. Morris, Jonathan Edgar, executors.  Sarah E. Raynor qualified,
and took out letters as such executrix.  Neither of the other persons named
has ever qualified as executor.  William R. Stewart had died before the ac-

tion in foreclosure was commenced. John H. Morris and Jonathan Edgar were both then living, and neither of them had made any formal renunciation either as executor or trustee. Mrs. Raynor (now Mrs. Cornish) was made a party to the suit as executrix and trustee under the last will and testament of William H. Raynor. Neither Morris nor Edgar were made such parties. None of the children or grandchildren of the testator, who are the *cestuis que trust* named in the will, were made parties. The appellant claims that by force of the will alone the several persons named as executors became trustees, and were vested with the trust-estate. He cites as authorities for this proposition *Dunning* v. *Bank*, 61 N. Y. 497, 6 Lans. 298; *Dominick* v. *Michael*, 4 Sandf. 375, and *Burritt* v. *Silliman*, 13 N. Y. 96. If the title vested in all the persons named as executors in the will, then all of such persons should have been made parties to the foreclosure, because it may well be asserted hereafter by the *cestuis que trust* that the making of one of their trustees a party cannot cut off their interest in the trust-estate; and they may be yet heard to assert that a joint estate is vested in the trustees by virtue of which they are jointly entitled to redeem the property sold for the benefit of the *cestuis que trust*, notwithstanding the fact that Mrs. Cornish was made a party to the action. How these questions should be determined we are not, under the authority of *Jordan* v. *Poillon*, 77 N. Y. 518, at liberty to decide, because the parties most interested in them are not before us in this action.'

"In view of that decision, and the doctrine of *Jordan* v. *Poillon*, 77 N. Y. 518, I fail to see how I can reach any other conclusion. Upon the whole case it therefore sufficiently appears the title sought to be forced upon the purchasers, so far as it rests upon the sufficiency of the judgment of the foreclosure obtained by Abraham Scholle, is not free from reasonable doubt, because neither Jonathan Edgar and John H. Morris, as surviving executors and trustees of William H. Raynor, deceased, nor the grandchildren of the said testator, were made parties to the action of foreclosure, and because the said Edgar and Morris did not, as trustees, join in the execution of the deed made by Mrs. Cornish to Scholle. The objecting purchasers had a right to expect that they would acquire a good title, which means a title free from reasonable doubt, and the law presumes that they bid with that object in view. As the plaintiff cannot give such a title, they must be relieved. The objections already considered are, so far as they have been sustained, so decisive of the motions that it is unnecessary to express an opinion concerning others. The motion of Mr. Lyons to be relieved from his bids must be granted, with costs, and the motion of the plaintiff that Mr. Brown be compelled to take title denied, with costs. The orders to be entered should be settled on notice."

Argued before SEDGWICK, C. J., and TRUAX, J.

*Alexander B. Johnson*, for appellant. *J. Bleeker Miller*, for respondent Lyons. *Thomas Hooker*, for respondent Brown.

PER CURIAM. The orders are severally affirmed upon the opinion of Judge FREEDMAN delivered below. The receipts of Scholle brothers, admitting the title of Raynor to three undivided tenths, have great effect in determining that probably the parties to the deed of Raynor to Phillips did not intend that it should convey the three-tenths referred to, and that there was a clerical omission from the deed. Orders severally affirmed, with $10 costs in each, with the disbursements to be taxed.